*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAWANNA SMITH, Personal Representative of the
ESTATE OF JACQUELINE HARRIS,

Plaintiff-Appellant/Cross-Appellee,

v

BEAUMONT HEALTH,

Defendant-Appellee/Cross-Appellant,

and

TRI COUNTY ORTHOPEDICS, PC, and JACK D.
LENNOX, D.O.,

Defendants-Appellees.

UNPUBLISHED
September 12, 2024

No. 365062
Oakland Circuit Court
LC No. 2021-187353-NH

Before: K. F. KELLY, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

In this medical-malpractice action, plaintiff, Lawanna Smith, as the personal representative of the Estate of Jacqueline Harris (the decedent), appeals as of right the trial court's opinion and order granting summary disposition in favor of defendant, Beaumont Health, on the basis of an allegedly insufficient affidavit of merit, which also resulted in dismissal of the claims against defendants, Jack D. Lennox, D.O. and Tri County Orthopedics, PC (TCO). Beaumont cross-appeals as of right from the same order. Plaintiff also challenges the trial court's order denying a motion for leave to amend her witness list. We vacate the trial court's orders (1) denying plaintiff's motion for leave to file an amended witness list, and (2) granting summary disposition in favor of Beaumont, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Dr. Lennox, a board-certified orthopedic surgeon, was an employee and owner of TCO. He was not an employee of Beaumont. In 2014, the decedent sought care from Dr. Lennox at TCO

for pain in her knee. Dr. Lennox performed a total knee arthroplasty (TKA), which was successful. He prescribed the decedent Coumadin, a prescription-strength anticoagulant, to prevent blood clots after the surgery. The decedent recovered well from the surgery.

In 2019, the decedent began suffering from pain in her other knee. She again sought treatment from Dr. Lennox at TCO. He once again informed the decedent the best course of treatment was another TKA. She agreed, and the surgery was performed by Dr. Lennox at Beaumont's hospital in Farmington Hills, Michigan. Instead of prescribing a prescription-strength anticoagulant like he did before, Dr. Lennox instructed the decedent to take aspirin instead. About 30 days after the surgery, the decedent suffered an acute pulmonary embolism and died.

Plaintiff sued Dr. Lennox, claiming his failure to prescribe Coumadin after the 2019 surgery was medical malpractice that caused the decedent's death from a blood clot. Plaintiff asserted Beaumont and TCO were vicariously liable for Dr. Lennox's negligence. Attached to the complaint was an affidavit of merit (AOM) signed by B. Sonny Bal, M.D. In it, Dr. Bal averred he was a board-certified orthopedic surgeon who had dedicated a majority of his professional time in the required field during the relevant time period. Dr. Bal also asserted the standard of care required that Dr. Lennox prescribe a prescription-strength anticoagulant medication and he breached the standard of care by not doing so which caused the decedent's death.

Litigation progressed through discovery, which was originally set to end in June 2022, before the date was extended in a signed, stipulated order to December 12, 2022.[1] In a timely-filed witness list, plaintiff identified Dr. Bal as her only expert in orthopedic surgery. Eventually, defendants began having issues with scheduling a deposition for Dr. Bal. When he backed out of a deposition in August 2022, defendants moved the trial court to compel his deposition. In response, plaintiff informed defendants that Dr. Bal had unexpectedly cut off communication with plaintiff, which was why his deposition could not be rescheduled. Plaintiff had already begun the process of finding a new expert in orthopedic surgery, John H. Hall, M.D. On September 16, 2022, without seeking leave of the trial court to do so, plaintiff filed an amended witness list that removed Dr. Bal and added Dr. Hall.

The trial court struck the amended witness list because of the procedural error. Plaintiff then moved for leave to file the amended witness list, which would provide plaintiff with a new expert in orthopedic surgery. The trial court denied the motion, citing the age of the litigation and the prejudice to defendants. Plaintiff then moved the trial court to voluntarily dismiss the case without prejudice, which would allow plaintiff to refile with a new expert witness. The trial court denied the motion, once again citing prejudice to defendants, who had spent time and money preparing for the present case.

While these issues with Dr. Bal continued to arise, defendants discovered Dr. Bal had previously testified that he retired from the practice of medicine in November 2017. Defendants contended plaintiff was engaged in gamesmanship by trying to shield the truth about Dr. Bal's

---

[1] During this time period, Beaumont moved for summary disposition under MCR 2.116(C)(10), arguing there was no genuine issue of material fact that it could not be held vicariously liable for the alleged negligence of Dr. Lennox. The trial court never decided the motion.

qualifications to be an expert witness. Defendants then moved for summary disposition under MCR 2.116(C)(8) and (C)(10) on the ground that Dr. Bal had not been qualified to prepare and submit the AOM with plaintiff's complaint. Plaintiff asserted that the challenge did not warrant summary disposition because, with respect to the AOM, the only relevant fact was whether plaintiff's attorney reasonably believed Dr. Bal had been qualified at the time the lawsuit was filed. Plaintiff insisted it was reasonable for an attorney to believe an affidavit signed by a doctor under oath. Defendants argued that plaintiff's attorney's alleged belief was not reasonable because a simple search of the Internet or review of Dr. Bal's curriculum vitae showed he was retired during the relevant time period.

The trial court granted defendants' motions for summary disposition under MCR 2.116(C)(10). The trial court determined that Dr. Bal had not been qualified to prepare the AOM because of his retirement from the practice and teaching of medicine. Further, while the trial court determined it was reasonable for plaintiff's attorney to believe Dr. Bal's averments about his qualifications, it concluded the reasonableness of the belief expired after more than a year of litigation. The trial court stated plaintiff's attorney should have determined Dr. Bal was not qualified in a timely manner and cured the error. The trial court commented that discovery had been closed since June 2022, seemingly ignoring the order that extended discovery. In any event, the trial court concluded that summary disposition was warranted because the AOM attached to plaintiff's complaint was insufficient. The trial court also decided the ruling required a dismissal of the complaint with prejudice.

Plaintiff moved the trial court to reconsider its decision, asserting it had misapplied relevant law regarding AOMs and the correct remedies when errors with them arose. The trial court denied the motion. This appeal and cross-appeal followed.

## II. AMENDED WITNESS LIST

Plaintiff argues that the trial court abused its discretion by denying the motion to amend the witness list without first considering the factors in *Dean v Tucker*, 182 Mich App 27; 451 NW2d 571 (1990).[2] We agree.

## A. STANDARD OF REVIEW

A trial court's decision regarding whether to allow a party to amend a witness list is reviewed for an abuse of discretion. *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Danhoff v Fahim*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 163120); slip op at 11. "A trial court necessarily abuses its discretion when it makes an error of law." *Id.* (quotation marks and citation omitted).

---

[2] Although *Dean* "is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless 'has precedential effect under the rule of stare decisis' pursuant to MCR 7.215(C)(2)." *Legacy Custom Builders, Inc v Rogers*, 345 Mich App 514, 525 n 1; 8 NW3d 207 (2023).

B.  LAW AND ANALYSIS

The trial court abused its discretion when it denied plaintiff's motion for leave to file an amended witness list because it resulted in an effective dismissal of the case and the trial court did not consider the *Dean* factors.

"Witness lists are an element of discovery," and "[t]he ultimate objective of pretrial discovery is to make available to all parties, in advance of trial, all relevant facts which might be admitted into evidence at trial." *Grubor Enterprises, Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993). "The purpose of witness lists is to avoid 'trial by surprise.' " *Id*., quoting *Stepp v Dep't of Natural Resources*, 157 Mich App 774, 778; 404 NW2d 665 (1987). "MCR 2.401(I)(1) provides that all parties must file and serve witness lists within the time allotted by the trial court." *Duray Dev, LLC v Perrin*, 288 Mich App 143, 162; 792 NW2d 749 (2010).  " 'The court may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon good cause shown.' " *Cox v Hartman*, 322 Mich App 292, 315; 911 NW2d 219 (2017), quoting MCR 2.401(I)(2).

It is undisputed in this case that the trial court ordered the parties to file their witness lists, including proposed expert witnesses, by May 6, 2022.  Plaintiff filed a timely witness list on April 25, 2022, naming Dr. Bal as the only expert in orthopedic surgery.  Plaintiff attempted to amend the list without leave of the trial court to exchange out Dr. Bal for Dr. Hall in October 2022.  The trial court struck the amended witness list because plaintiff had not moved for leave to file it.[3] Plaintiff then sought such leave, which the trial court denied.

Because plaintiff's motion for leave to amend the witness list to add Dr. Hall as an expert in orthopedic surgery was filed after the deadline set by the trial court, "[i]t was [] plaintiff's burden to demonstrate good cause for the late addition of a new expert witness." *Cox*, 322 Mich App at 315.  "The denial of a late motion to add a witness 'is proper where the movant fails to provide an adequate explanation and show that diligent efforts were made to secure the presence of the witness.' " *Id*., quoting *Tisbury*, 194 Mich App at 20.  "A court should consider whether prejudice would result from granting a motion to add an expert witness." *Cox*, 322 Mich App at 315.

While a showing of good cause is the typical standard when deciding a motion to amend a witness list to add an expert after the deadline, this Court has established a more rigorous analysis when the denial of such would effectively result in a dismissal.  The parties disagree regarding whether the trial court's decision required the more rigorous analysis.  "Disallowing a party to call witnesses can be a severe punishment, equivalent to a dismissal." *Duray Dev*, 288 Mich App at 164.  "But that proposition does not mean that disallowing witnesses is *always* tantamount to a

---

[3] In part, plaintiff contends the trial court abused its discretion because it promised to grant the motion for leave to amend the witness list during the October 12, 2022 hearing regarding the motion to strike plaintiff's amended witness list.  But the trial court never made such a promise. The court only indicated at the hearing that such a motion must be filed for the trial court to consider it.  And the trial court's written order entered after the hearing states "that plaintiff may file a motion to amend their witness list to be heard on a later date and time."  Thus, the court indicated it would consider such a motion, if filed.  The court did not promise to grant it.

dismissal. Nor does it mean that a trial court cannot impose such a sanction even if it is equivalent to a dismissal." *Id.*

"A plaintiff in a medical malpractice action bears the burden of establishing (1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Danhoff*, ___ Mich at ___; slip op at 11 (quotation marks and citations omitted). Except for in circumstances undisputedly not present in this case, "[e]xpert testimony is required to establish the applicable standard of care and demonstrate a breach of that standard." *Zehel v Nugent*, 344 Mich App 490, 510; 1 NW3d 387 (2022). "Failure to prove any one of the [above] elements is fatal" to a medical-malpractice action. *Id.* (quotation marks and citation omitted).

In the present case, as noted, plaintiff originally listed Dr. Bal as an expert witness regarding orthopedic surgery. Importantly, this was the same specialty as Dr. Lennox, which meant Dr. Bal would be able to testify regarding the standard of care Dr. Lennox should have used when treating the decedent and whether that standard was breached. Establishing the applicable standard of care and whether it was breached are necessary elements of a medical-malpractice claim. *Danhoff*, ___ Mich at ___; slip op at 11. In his AOM, Dr. Bal explained that he believed the applicable standard of care required Dr. Lennox to prescribe the decedent a stronger anticoagulant medication than aspirin. Further, Dr. Bal opined that the failure to do so violated the standard of care and resulted in the decedent's death. Plaintiff's original witness list did not contain any other experts in orthopedic surgery.

When plaintiff moved for leave to amend the witness list, the explanation for the motion was that Dr. Bal had unexpectedly become uncommunicative while trying to schedule his deposition. Plaintiff expressed that Dr. Bal's refusal to participate in litigation required a new expert witness to be found. Plaintiff had already found another expert, Dr. Hall, who was also board-certified in orthopedic surgery. Therefore, plaintiff sought to exchange those two expert witnesses. Defendants argued that the record did not support plaintiff's contention that Dr. Bal became uncommunicative during the litigation. Nevertheless, defendants agreed that Dr. Bal was not capable of testifying as an expert witness regarding the applicable standard of care for Dr. Lennox and whether he breached it. Despite the parties' disagreement regarding why Dr. Bal was no longer available to testify as an expert, they all agreed he was not available. Because Dr. Bal undisputedly was unable to testify as an expert witness in this case, the denial of plaintiff's motion to amend the witness list left plaintiff without an expert witness regarding standard of care and breach of it.

The trial court's denial of the motion effectively was a dismissal. See *Duray Dev*, 288 Mich App at 164. As just discussed, the trial court's order made it so plaintiff did not have an expert witness regarding standard of care and breach. Further, as the caselaw cited above establishes, plaintiff had to prove the standard of care and whether it was breached by using an expert witness in the same specialty as Dr. Lennox. See *Zehel*, 344 Mich App at 510. Because plaintiff no longer had an expert witness, plaintiff could not prove two necessary elements. This was fatal to plaintiff's claims in this case. See *id*. As a result, the trial court's order disallowing plaintiff from exchanging Dr. Bal for Dr. Hall was an effective dismissal because plaintiff could not possibly prove the claims brought in the complaint. See *id*.; *Duray Dev*, 288 Mich App at 164. Indeed, the effect of the order was clear when, just one month later, the trial court ordered the case

-5-

dismissed because Dr. Bal was not qualified to be an expert witness in the case, which meant he had not been qualified to provide the AOM.

As noted, when an order that precludes a witness from testifying would effectively result in a dismissal, the trial court must engage in more rigorous considerations before doing so. See *Dean*, 182 Mich App at 32 ("Where the sanction is the barring of an expert witness resulting in the dismissal of the plaintiff's action, the sanction should be exercised cautiously."). Trial courts have "the broad inherent power . . . to address misconduct and sanction the parties and lawyers who appear before the court." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 10-11. While dismissal is a potential sanction, Michigan law favors the "disposition [of] litigation on the merits[.]" *Gueye v State Farm Mut Auto Ins Co*, 343 Mich App 473, 489; 997 NW2d 307 (2022) (quotation marks and citation omitted; alterations in original). "Dismissal is a drastic step that should be taken cautiously." *Vicencio v Jaime Ramirez, MD, PC*, 211 Mich App 501, 506; 536 NW2d 280 (1995). "Before imposing such a sanction, the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper." *Id*. When a trial court fails to consider other options on the record, it abuses its discretion. *Id*. at 506-507.

In addition to requiring the trial court to consider other viable options before effectively dismissing a case by barring the testimony of a necessary expert witness, Michigan caselaw requires the consideration of a number of factors, generally referred to as the *Dean* factors. *Dean*, 182 Mich App at 32. This Court stated the factors in the following manner:

> Among the factors that should be considered in determining the appropriate sanction are: (1) whether the violation was wilful or accidental, (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses), (3) the prejudice to the defendant, (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice, (5) whether there exists a history of plaintiff engaging in deliberate delay, (6) the degree of compliance by the plaintiff with other provisions of the court's order, (7) an attempt by the plaintiff to timely cure the defect, and (8) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive. [*Id*. at 32-33 (citations omitted).]

In the present case, the trial court denied plaintiff's motion to file an amended witness list. Though the trial court did not speak about sanctions for plaintiff's failure to timely file the corrected witness list, the sanction was plain from the decision. That is, the trial court's order barred plaintiff from changing the expert witness needed to prove standard of care and breach related to the alleged medical malpractice of Dr. Lennox. As a matter of law, and as discussed above, this caused plaintiff's claims to fail, effectively resulting in a dismissal. The trial court did not hold a hearing regarding plaintiff's motion to file an amended witness list. In the trial court's opinion and order denying the motion, it commented solely on whether granting the motion would be prejudicial to defendants:

> This matter was filed on April 9, 2021. Witness lists in this matter were due by May 6, 2022, with discovery closing on June 7, 2022. Trial in this matter is

currently set for February 7, 2023. Allowing an amended witness list at this late
stage is also highly prejudicial.

The above quotation is the sum total of the trial court's reasoning with respect to its denial of the motion for leave to amend the witness list. While prejudice to the defense is one of the *Dean* factors, it is not the only one. Moreover, as this Court has stated, the trial court *must* consider other potential sanctions on the record before entering an order that effectively amounts to a dismissal. *Vicencio*, 211 Mich App at 506. In the simplest terms, and as is evident from the above quotation, the trial court did not do that; and, as a result, abused its discretion as a matter of law. See *id*. Additionally, even the trial court's analysis of prejudice seems to be on the basis of a misunderstanding of the procedural status of the case. Pertinently, the trial court stated discovery closed about five months before the order was entered. However, the record shows the June 7, 2022 discovery deadline was extended to December 12, 2022. Thus, discovery was still open, which, at the very least, reduces any prejudice to the defense.

In sum, by denying plaintiff's motion for leave to file an amended witness list, the trial court effectively dismissed plaintiff's case for a failure to timely file a final witness list. Although the sanction is not named in the same order, the effect was preordained by the substance of the order. Briefly, without an expert witness in orthopedic surgery, plaintiff's case simply could not progress. Because the trial court's decision amounted to a dismissal, the trial court was required to consider the *Dean* factors, especially the possibility of sanctions other than an effective dismissal, such as a fine for the late amendment and the additional discovery needed to be undertaken by the defense. The trial court's failure to do so was an abuse of discretion, warranting reversal and a remand for further proceedings at which time the trial court can engage in the proper analysis with reference to the proper facts. See *Vicencio*, 211 Mich App at 506.[4]

### III. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred when it granted Beaumont's motion for summary disposition and dismissed the case. We agree.

---

[4] The parties urge us to consider whether, if the trial court *had* considered the *Dean* factors, it still would have chosen to deny the motion and leave plaintiff without an expert witness. However, as an error-correcting court, we generally will not decide issues not ruled upon originally by the trial court. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018). This is especially true when the trial court's decision failed to apply the appropriate legal framework, which is the case here. See *id*. (holding that because "it is apparent that the trial court's ruling in the instant case was based on an erroneous application of the pertinent legal principles . . . it would be better for any additional matters . . . to be addressed in the first instance by the trial court under the proper legal framework"). To address this issue as suggested by the parties, we would have to invent reasoning by the trial court, and then analyze whether the imaginary analysis of the trial court was an abuse of discretion. We decline to do so for the same reasons stated in *Jawad A Shah, MD, PC*, 324 Mich App at 210.

## A. STANDARD OF REVIEW

"This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted). "A trial court's rulings concerning the qualifications of proposed expert witnesses are reviewed for an abuse of discretion." *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016). "A trial court does not abuse its discretion when its decision falls within the range of principled outcomes." *Id*.

## B. LAW AND ANALYSIS

In light of the analysis above, the trial court's summary-disposition decision was premature, warranting reversal.

Plaintiff argues that the trial court's order granting summary disposition in favor of Beaumont and dismissing the case was erroneous for a number of reasons. The primary disagreement relates to Dr. Bal's qualifications to provide the AOM in this case. Our Supreme Court provided the following guidance on this issue:

> Under Michigan's statutory medical malpractice procedure, plaintiff must obtain a medical expert at two different stages of the litigation—at the time the complaint is filed and at the time of trial. With regard to the first stage, under MCL 600.2912d(1), a plaintiff is required to file with the complaint an affidavit of merit signed by an expert who the plaintiff's attorney reasonably believes meets the requirements of MCL 600.2169. With regard to the second stage, the trial, MCL 600.2169(1) states that "a person shall not give expert testimony . . . unless the person" meets enumerated qualifications (emphasis added). Thus, while at the affidavit-of-merit stage a plaintiff's attorney need only "reasonably believe" the expert is qualified, at trial the standard is more demanding because the statute states that a witness "shall not give expert testimony" unless the expert "meets the [listed] criteria" in MCL 600.2169(1).

> The Legislature's rationale for this disparity is, without doubt, traceable to the fact that until a civil action is underway, no discovery is available. See MCR 2.302(A)(1). Thus, the Legislature apparently chose to recognize that at the first stage, in which the lawsuit is about to be filed, the plaintiff's attorney only has available publicly accessible resources to determine the defendant's board certifications and specialization. At this stage, the plaintiff's attorney need only

have a reasonable belief that the expert satisfies the requirements of MCL 600.2169. See MCL 600.2912d(1). However, by the time the plaintiff's expert witness testifies at trial, the plaintiff's attorney has had the benefit of discovery to better ascertain the qualifications of the defendant physician, and, thus, the plaintiff's attorney's reasonable belief regarding the requirements of MCL 600.2169 does not control whether the expert may testify. [*Grossman v Brown*, 470 Mich 593, 598-599; 685 NW2d 198 (2004).]

The required qualifications mentioned above are listed in MCL 600.2169(1), which states as follows:

(1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

(*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

(c) If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis

for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) Active clinical practice as a general practitioner.

(*ii*) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed.

Before considering whether the trial court properly concluded summary disposition was warranted on the basis of Dr. Bal's lack of qualifications, we must first determine whether, as argued by plaintiff, the trial court's order granting summary disposition was premature. "Generally, a grant of summary disposition is premature before discovery on a disputed issue is complete." *Doe v Gen Motors, LCC*, 511 Mich 1038, 1038-1039 (2023). "However, a party may not simply allege that summary disposition is premature. The party must clearly identify the disputed issue for which it asserts discovery must be conducted and support the issue with independent evidence." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 253; 964 NW2d 50 (2020). "The dispositive inquiry is whether 'further discovery presents a fair likelihood of uncovering factual support for the party's position.' " *Id.*, quoting *Mazzola v Deeplands Dev Co, LLC*, 329 Mich App 216, 230; 942 NW2d 107 (2019).

Despite the parties' treatment of this issue as separate from the issue above, they are undeniably intertwined. The trial court's order granting summary disposition was on the basis of a determination Dr. Bal had not been qualified to provide an AOM in this case. While plaintiff disputed whether this was true, plaintiff had effectively agreed Dr. Bal could not be plaintiff's expert when it came to standard of care and breach. Plaintiff explained that Dr. Bal had unexpectedly become unresponsive during discovery. In an attempt to remedy that problem, plaintiff sought to obtain a new expert in orthopedic surgery, Dr. Hall. The litigation regarding plaintiff's attempt to do so was discussed in greater depth above. It is enough to say the trial court abused its discretion when it denied plaintiff's motion for leave to amend the witness list to add Dr. Hall as an expert. Whether the trial court, after performing the appropriate analysis, will decide similarly on remand remains to be seen. But because there is a possibility plaintiff will be permitted to amend the witness list and have a qualified expert witness, the trial court's summary-disposition order was premature. See *Powell-Murphy*, 333 Mich App at 253.

More specifically, Beaumont's motion for summary disposition on the basis of plaintiff's failure to file a sufficient AOM with the complaint was filed on November 4, 2022. Notably, this was filed after the trial court struck plaintiff's amended witness list but before the trial court decided plaintiff's motion for leave to file the amended witness list. Despite the trial court's apparent confusion, discovery was still open when the motion was filed. On the basis of a stipulated order signed by the parties and the trial court, discovery did not close until December 12, 2022. Moreover, absent the trial court's order precluding plaintiff from replacing Dr. Bal with Dr. Hall, discovery could have continued with a deposition of Dr. Hall and the filing of an amended AOM by Dr. Hall. See *Legion-London v Surgical Institute of Mich Ambulatory Surgery Ctr, LLC*,

331 Mich App 364, 376; 951 NW2d 687 (2020) ("In sum, we hold that under MCR 2.112(L)(2)(b), an AOM may be amended by submitting an affidavit signed by a different expert when there has been a challenge to the 'qualifications of the signer.' Such an amendment relates back to the original filing. MCR 2.118(D)."). In other words, because discovery was still open and plaintiff had found and proposed a new expert witness in the appropriate specialty, " 'further discovery present[ed] a fair likelihood of uncovering factual support for the party's position.' " *Powell-Murphy*, 333 Mich App at 253, quoting *Mazzola*, 329 Mich App at 230. Because summary disposition was premature, we vacate the order.[5] The trial court should consider the motion after employing the appropriate framework to determine whether plaintiff should be permitted to amend the witness list to add a new expert.[6]

## IV. CROSS-APPEAL

Beaumont argues that the trial court could have granted summary disposition on the basis of there being no question of fact regarding whether Beaumont could be held vicariously liable for Dr. Lennox's alleged medical malpractice, which is an alternative ground for affirmance. As this Court has noted, "[a]s an error-correcting court, this Court's review is generally limited to matters actually decided by the lower court." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018) (citations omitted). Even so, "this Court may affirm the grant of summary disposition on an alternate ground that was not decided by the trial court when the issue was presented to the trial court." *Id*. Nevertheless, when the circumstances demand such, this Court is free to "conclude that it would be better for any additional matters relating to [plaintiff's] complaint to be addressed in the first instance by the trial court . . . ." *Id*. Because it would be beneficial for the trial court to consider this argument in the first instance, we decline to consider it.

## V. CONCLUSION

For the reasons stated above, we vacate the trial court's orders (1) denying plaintiff's motion to file an amended witness list and (2) granting summary disposition in favor of Beaumont

---

[5] While we decline to consider and decide the issue on the merits, we caution the trial court that precedent of our Supreme Court requires challenges to an AOM to be limited to whether a plaintiff's attorney reasonably believed the expert was qualified. *Grossman*, 470 Mich at 598-599, citing MCL 600.2912d(1).

[6] Plaintiff also challenges the trial court's order denying the motion for voluntary dismissal without prejudice. However, plaintiff only requested reversal of that order if we affirmed the trial court's orders denying the motion to amend the witness list and for summary disposition. Because we have vacated those orders, plaintiff's challenge to the trial court's decision regarding dismissal without prejudice is now moot, and we decline to consider it. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks and citation omitted) (holding that a case is moot when "[i]t involves a case in which a judgment cannot have any practical legal effect upon a then existing controversy," and that, "[a]s a general rule, this Court will not entertain moot issues or decide moot cases").

-11-

and dismissing the case.  We remand to the trial court for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly